*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J. SARBOUKH, | : |
| Plaintiff, | : Civil Action No. 15-6499 (JLL) |
| v. | : **OPINION** |
| JO ASTRID GLADING, et al., | : |
| Defendants. | : |

**LINARES**, District Judge:

Currently before the Court is the complaint of Plaintiff, J. Sarboukh, (ECF No. 1), and Plaintiff's application to proceed *in forma pauperis* (Document 1 attached to ECF No. 1). Plaintiff's complaint raises several claims brought pursuant to 42 U.S.C. § 1983. Based on the information contained in Plaintiff's application to proceed *in forma pauperis*, the Court finds that leave to proceed in this Court without prepayment of fees is authorized, 28 U.S.C. §1915, and will therefore order the Clerk of the Court to file Plaintiff's Complaint. As the Court grants Plaintiff's application to proceed *in forma pauperis*, this Court must screen Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and determine whether it is frivolous, malicious, fails to state a claim for relief, or seeks damages from a defendant who is immune. As the Court finds that Plaintiff's complaint fails to state a claim for which relief can be granted, this Court will dismiss Plaintiff's complaint without prejudice to the filing of an amended complaint within thirty (30) days.

## I. BACKGROUND

Plaintiff is currently civilly committed as a sexually violent predator at the Special Treatment Unit in Avenel, New Jersey. On August 31, 2015, Plaintiff filed a complaint with this Court purportedly for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is hand written and extremely difficult to read, often varying in size, clarity, punctuation, capitalization, etc. (ECF No. 1 at 5). Plaintiff's writing also frequently includes handwritten notes in the margin which are often written in extremely small text. (*Id.*). To the extent that this Court can read the complaint, Petitioner makes the following allegations:

> Since approx[imately] 2011[,] Anti-Semetic Hate Crimes (for [Defendant] Glading its been on going) [and] official misconduct/abuse of official position[.] But it peak[s] wen she conspired to get [Defendant Collins] to join in malpractice for about 6 month[s] they conspired and [illegible] on Oct. 1[,] 2014[,] + Nov. 14[,] 2014[.] This pains me to write + relive all this abuse that caused me severe pain [illegible] daily including but not limited to emotional distress + mental anguish! [A second margin note written below this statement is present but cannot be discerned.] Please understand I am hospitalized + handicapped meaning hospitalized under the [Department of Human Services] inpatient treatment center civil commitment and handicap[ped] meaning confined to a wheel chair due to a stabbing anti-Semitic hate crime attempted on my life again by a black racist convicted killer Curtis Austin whom they were all well [illegible] + did nothing to keep me or my property separate and safe from (as a Jew) (including [Defendant Glading's] office) then and still now babying the black[,] crucifying the Jew[.] They continue to violate my state + federal civil rights/liberties anti-Semitic hate crimes including but not limited to abuse of [illegible] position (in a fiduciary position of trust!) official malicious misconduct malicious malpractice by both co-conspirator codefendants that are homosexual which you will see (enclosed article)[1] regarding American Psychiatric Associate

---

[1] Plaintiff attaches to his complaints several articles written in opposition to same sex marriage which include a brief statement that, until the 1970s, homosexual behavior was considered a mental illness. (*See* Document 2 attached to ECF No. 1 at 5).

2

> considers it a mental disorder in itself with both co-defendant labeled mentally ill with mental disorder by [the] APA[.] Why + how are they legally + morally put in a fiduciary position of trust to help me with my disabilities + disorder[?] Thus this lawsuit! Not to mention derelict[ion] of duties[,] I asked them both to read about Dr. Ash + Dr. Pressman! Willful gross negligence by both hell bent on force medicat[ing] me like a wild animal[,] did not return to hear or help with any other ideas [or] issues[.] Aiding + abetting in criminal activity by a classified daily mail stolen by staff as in [illegible] punishment [illegible] form support system loved ones [the statement continues but is illegible.] Denied federal right to access courts [through] non-collect legal calls nothing done! Denied federal right to ADA roll in shower unit all year nothing done all year![2] Denied federal right to hot cooked [illegible] religious meals [several illegible words follow]. Denied my right to life liberty freedom due to their actions[.]

(ECF No. 1 at 5, spelling and capitalization errors omitted).

Plaintiff also attaches to his complaint the following addendum explaining the reference to Drs. Ash and Pressman:

> This needs to be added to this federal civil rights/malicious malpractice lawsuit regarding anti-Semitic hate crimes [which] almost cost me my life! Note – I explain to . . . both co-defendants/co-conspirators instead of their malicious malpractice violating me + my state + federal civil rights anti-Semitic discriminating hate crime including but not limited to official misconduct, dereliction of duties, gross willful negligence, aiding and abetting in abuse of power + position (in a fiduciary position of trust) to name a few[.]
>
> I asked them both[,] begging them at their mercy please do your due diligence have an ethical + moral compass for once go to "invithealthblog.com" speak to a Dr. Allan Pressman about his April 30th 2015 Program! Regarding shots to the head + damaging the blood brain barrier[.] I have suffered over 20 head shots gave them

---

[2] Plaintiff states elsewhere that he has been "unable to bath[e]" as he was "removed from ADA roll in shower unit," thus his claim appears not to be that there are no accommodating shower units, but rather that he's been denied access to them. (ECF No. 1 at 6).

3

both a list of dates times places + [illegible] to build my case from for them to verify with medical personnel involved + base my case defense to discharge on that ground since DHS wonders why I can't produce meaningful work!  A simple case[,] let's look at numerous anti-Semitic hate crimes of brutal violence/attempts on my life as cause[.]  Needless to say[,] they ignored me as their client.  Then I begged them both to go to "ashcenter.com" speak to a Dr. Richard Ash [and] ask him about [the same] head trauma [and] to then ask him the moral and ethic[al] question "drug the symptoms or address the cause[?]"

He will tell you as an integrated alternative doctor never just drug the symptoms to make them go away[,] treat the problem PTSD/TBI/Head Trauma/Safety + Security issue[s.]  Never any justice/change/compensation/[illegible] closure/peace[.]  He[,] as a doctor[,] was once a patient/victim of this kind of abuse of drugs by "pill-pushing" doctors [illegible note] it almost killed him!  Those Dr. Ash + Dr. Pressman testimony would have secured my discharge[.]  Kill me[,] silence me – that is what these 2 co-defendant co-conspirators wanted to do.  Even [the] judge laughed that my side said I'm worse than opponents did[.]  And not the opponent but my side wanted to force inject me like a wild animal.  It's laughable to everyone but me.  That is what they were hell bent on [illegible sentence].  These 2 are a sick brew of farce + tragedy! + need to lose license + freedom/liberty before they lose someone's life!

(ECF No. 1 at 3-4).  Based on these perceived violations, Plaintiff asks this Court to award him damages for pain and suffering and injunctive relief in the form of taking away the licenses of the two defendants.  (ECF No. 1 at 6).  Plaintiff provides no further information as to the actual jobs or positions of the two Defendants, nor specifically states what they did beyond the unclear allegations recounted above.

## II. DISCUSSION

### A. Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff has been granted *in forma pauperis* status.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se*

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

5

pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to make claims against defendants for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (the statute provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff appears to be asserting claims that he has been denied access to the courts in violation of his First Amendment rights, been denied his right to religious expression in so much as he has not received "hot cooked" religious meals in violation of his First Amendment rights, been denied his First Amendment rights in so much as Defendants have "aided and abetted" the theft by staff of his mail, and that he has been denied his right to liberty under the Fourteenth

6

Amendment.[4]  Petitioner also seeks to raise a claim pursuant to the Americans with Disabilities Act because he has been denied access to the roll in shower unit for a year.

### 1. Denial of Access to the Courts

Plaintiff claims that he has been denied access to the courts because he is not permitted to make non-collect legal calls.  In order to bring a First Amendment denial of access claim, however, a Plaintiff must show that he has suffered an imminent or past "actual injury."  *Cooper v. Sharp*, No. 10-5245, 2011 WL 1045234, at *11-12 (D.N.J. Mar. 23, 2011); *see also Lewis v. Casey*, 518 U.S. 343, 348-51, 354-55 (1996).  A Plaintiff in this context suffers an injury when he "has lost the opportunity to pursue a 'nonfrivolous' or 'arguable' underlying claim."  *Aultman v. Comm. Educ. Cntrs. Inc.*, 606 F. App'x 665, 668 (3d Cir. 2015); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  Plaintiff has presented no more than an allegation that the lack of non-collect legal calls violates his rights and has failed to make any allegation that he has suffered the required actual injury.  He has therefore failed to state a claim for denial of access.

---

[4] Plaintiff also vaguely asserts that Defendants negligently impugned his rights by forcefully medicating him.  Putting aside that Plaintiff is committed against his will for treatment, negligence is insufficient to support a violation of § 1983, *see, e.g., Schwartz v. Cnty. of Montgomery*, 843 F. Supp. 962, 971 (E.D. Pa. ), *aff'd*, 37 F.3d 1488 (3d Cir. 1994), and thus Petitioner has failed to state a claim to the extent that he intended to raise a Fourteenth Amendment claim for deliberate indifference to his medical needs.  Petitioner likewise states that he is wheelchair bound because he was stabbed by another individual from whom he was not kept safe without expressly claiming Defendants failed to protect him.  Were Plaintiff's complaint intended to raise a failure to protect claim, however, he has failed to provide any basis for a conclusion that these Defendants were deliberately indifferent to any danger this individual posed to Plaintiff before the stabbing.  *See, e.g., Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106, 109 (3d Cir. 2011).  Thus to the extent that Plaintiff wished to raise such claims separate and apart from the remaining claims described below, Plaintiff would fail to state a claim for which relief could be granted.

7

### 2. Plaintiff's mail claim

Plaintiff next asserts that Defendants "aided and abetted" the theft of his mail by staff of the STU. Confined individuals, "by virtue of their [confinement], do not forfeit their First Amendment right to use of the mails." *Holbrook v. Kingston*, 552 F. App'x 125, 129 (3d Cir. 2014) (quoting *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006)). Such an individuals' mail rights, however, "must be exercised with due regard for the inordinately difficult undertaking that is modern [institutional] administration." *Id.* (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). The right to mail may therefore be restricted on the basis of legitimate institutional interests, such as institutional security. *Id.* Generally, a pattern or practice of opening an individual's mail is necessary to make out a cognizable claim for a violation of a plaintiff's right to the mails, and a single instance of destroyed personal mail is therefore insufficient to support a claim for a violation of the First Amendment. *See Jones*, 461 F.3d at 358-59; *see also Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012). Petitioner here makes only the bald assertion that Defendants aided and abetted in the theft of his mail. He makes no allegations as to when, how frequently, or by whom his mail was actually stolen. Thus, even if Plaintiff can be said to have alleged personal involvement by Defendants in the theft of his mail, he has failed to allege any pattern or practice of mail theft, and has thus failed to state a claim for a violation of his First Amendment communication rights.

### 3. Plaintiff's Free Exercise claim

Plaintiff also alleges that Defendants denied him his right to "hot cooked. . . religious meals" in violation of his rights under the First Amendment. "The Free Exercise Clause of the First Amendment prohibits prison officials from denying [a confined individual] "a reasonable opportunity of pursuing his faith." *McCray v. Passaic County Jail*, No. 13-6975, 2013 WL 6199202, at *2 (D.N.J. Nov. 27, 2013) (quoting *Cruz v. Beto*, 405 U.S. 319, 322, 322 n. 2 (1972)). To make out a claim for denial of an individual's free exercise rights, an individual must show that he has a sincerely held religious belief, and the institution's imposition on that belief is not reasonably related to a legitimate institutional interest. *Id.* Plaintiff claims here not that he has been entirely prevented from eating a religiously appropriate diet (presumably kosher meals based on his assertion that he is Jewish), but rather that he has not been served "hot cooked" religious meals. The Third Circuit, however, has held that the provision of vegetarian meals, as opposed to hot religious meals including properly prepared meats, does not violate an individual's free exercise rights. *Id.*; *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003). Plaintiff's assertion, that he has not been provided hot cooked religious meals, without more, such as an assertion that no religiously appropriate meals have been made available, fails to state a claim for which relief may be granted, and must therefore be dismissed at this time.

### 4. Plaintiff's Fourteenth Amendment Claim

Plaintiff's last § 1983 claim is that he has been denied his right to liberty, presumably pursuant to the Fourteenth Amendment. Plaintiff does not allege how, other than via his civil

9

commitment as a sexually violent predator,[5] he has been denied his right to liberty. Plaintiff provides no more than a bald assertion that his rights to liberty have been denied, which is patently insufficient to plead a claim for relief. *Iqbal*, 556 U.S. at 678. As Plaintiff has not supported this allegation with factual support which would present any plausible basis for relief, this claim, too, must be denied for failure to state a claim for which relief may be granted.

### 5. Plaintiff's ADA claim

Plaintiff's final claim is that Defendants have violated his rights under the Americans with Disabilities Act by denying him access to a roll in shower unit for a year. A claim for a violation of the Act arises out of Title II of the ADA or section 504 of the Rehabilitation Act of 1973. *See, e.g., Calloway v. Boro of Glassboro Dep't of Pol.*, 89 F. Supp. 2d 543, 551 (D.N.J. 2000). To state a claim under either statute, a Plaintiff must demonstrate that he is a qualified individual with a disability, that he was denied the benefits of a program or activity of a public entity, and that the exclusion from those benefits occurred by reason of his disability. *Id.* To the extent that Plaintiff has pled a claim for such a violation, however, Plaintiff only pleads that claim against two individuals,[6] and not against any public entity. "[I]ndividual liability is not contemplated under

---

[5] To the extent such commitment alone was intended to be raised as a violation of Plaintiff's rights, such a claim would fail as a matter of law. S*ee, e.g., Harris v. Christie*, No. 10-2402, 2010 WL 2723140, at *6 (D.N.J. July 7, 2010) (New Jersey Sexually Violent Predator Act essentially the same as SVP statutes that have been held not to violate the Fourteenth Amendment and therefore commitment under the act does not, in and of itself, violate Due Process).

[6] This issue is further complicated by the fact that Plaintiff has provided no information as to who Defendants are, what position, if any, they hold at the STU, how specifically they were involved in the alleged violation, or what authority they possess by virtue of their position, if

Title II of the Disability Act and § 504 of the Rehabilitation Act" and a claim against an individual, as opposed to a claim against the public entity denying its benefits, is not cognizable under the Acts. *Id.* at 557 (collecting cases concluding individual liability is not proper). Thus, to the extent that Plaintiff has pled a claim for a violation of his rights under the ADA, he has failed to name a proper defendant, and that claim must be dismissed against these Defendants for failure to state a claim for which relief may be granted. As this Court is dismissing without prejudice all of Plaintiff's claims, Plaintiff's complaint will be dismissed in its entirety for failure to state a claim for which relief can be granted.

---

any, at the STU.

## III. CONCLUSION

For the reasons stated above, Plaintiff's application to proceed *in forma pauperis* is GRANTED, and the complaint shall be filed. As Plaintiff has failed to state a claim for which relief shall be granted, however, Plaintiff's complaint shall be dismissed DISMISSED WITHOUT PREJUDICE, and Plaintiff shall be given leave to file an amended complaint within thirty (30) days. Plaintiff's complaint, as demonstrated by the quotations above, was quite difficult to read and contained numerous notes scrawled in the margins and frequent bouts of complete illegibility. As such, should Plaintiff choose to file an amended complaint, he should write or type the complaint legibly, in a consistent size equivalent to 12 point typed font, and should refrain from adding notes in the margins. If Plaintiff requires more space than is available in the form complaint, he should add additional pages rather than overfill the space provided. An appropriate order follows.

DATED: September 8, 2015.

_____
Hon. Jose L. Linares,
United States District Judge

12